**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | ) | Civil Action No. 09-1123 |
| DEPARTMENT OF ENVIRONMENTAL | ) | |
| PROTECTION, | ) | Magistrate Judge Lenihan |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BEAZER EAST, INC., BOLDAN, INC., | ) | |
| CARNEGIE MELLON UNIVERSITY, CBS | ) | |
| CORPORATION, and EXXON MOBIL | ) | Re: ECF Nos. 62, 65, & 67 |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Presently before the Court are Motions to Dismiss Plaintiff Pennsylvania Department of Environmental Protection's ("DEP") Amended Complaint (ECF No. 54) pursuant to Fed. R. Civ. P. 12 (b) (6) filed by Defendant Carnegie Mellon University ("CMU") (ECF No. 67), Defendant CBS ("CBS") (ECF No. 62), and joined in by Defendant Exxon Mobil Corporation ("Exxon") (ECF No. 65) [hereinafter collectively "Defendants"].

DEP filed this civil action pursuant to § 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, *as amended*, 42 U.S.C. §§ 9601-9675, ("CERCLA"), 42 U.S.C. § 9607(a), for the recovery from Defendants of response costs and interest incurred by Plaintiff in responding to the release or threatened release from the former Boldan Landfill ("Site") located in Penn Township, Westmoreland County, Pennsylvania.

Defendants filed Motions to Dismiss DEP's original Complaint. (ECF Nos. 9, 13, 17, 22.) DEP responded to Defendants' Motions (ECF. No. 40), indicating that it desired leave to amend its complaint in the event that the Court would not consider its exhibits and affidavit attached to its responsive brief. (ECF No. 40 at 4 n.1.) Thereafter, the Court granted leave to file an Amended Complaint, and further ordered that Defendants file either an Answer thereto, or a motion to dismiss the Amended Complaint. (ECF No. 53.) DEP filed its Amended Complaint on March 31, 2010 (ECF No. 54), and attached the affidavit and accompanying attachments originally filed with its Response at ECF No. 40. Thereafter, Defendants filed the Motions to Dismiss presently before the Court. For the reasons that follow, Defendants' Motions to Dismiss at ECF Nos. 62, 65 and 67 will be granted, and Plaintiff's Amended Complaint at ECF No. 54 will be dismissed with prejudice as to Defendants Carnegie Mellon University, CBS Corporation, and Exxon Mobil Corporation.

THE AMENDED COMPLAINT

Defendant Bolden, Inc.[1] has owned the Site since 1962 and operated it as a landfill from 1962 to 1970. (Amended Complaint, ECF No. 54 at ¶ 10 [hereinafter "ECF No. 54 at ¶ __"].) DEP was aware as early as 1988 that a release or threatened release of hazardous substances was occurring at the Site. (ECF No. 54 at ¶ 11.) Pursuant to § 501 of the Pennsylvania Hazardous Sites Cleanup Act ("HSCA"), 35 P.S. § 6020.501, the DEP conducted a comprehensive investigation of the Site from December 2001 through September 2002 that delineated the release and threatened release of hazardous substances occurring at the Site. (ECF No. 54 at ¶ 12.) DEP avers that its 2001-2002 investigation of the Site pursuant to the HSCA served to

---

[1] Although Bolden, Inc. is a named Defendant in the above-captioned case, it did not join in the Motions to Dismiss presently before the Court.

monitor, assess and evaluate the release and threatened release of hazardous substances at the Site.  (ECF No. 54 at ¶ 13.)  The DEP then characterizes its actions during the 2001-2002 investigation of the Site pursuant to the HSCA as the equivalent of a CERCLA removal.  (ECF No. 54 at ¶ 14.)  The DEP continues that as a result of this investigation of the Site, it determined that prompt action was not necessary because no immediate threat to the environment and/or community was present.  (ECF No. 54 at ¶ 15.)  The DEP avers that it therefore elected not to undertake a prompt interim response at the Site pursuant to § 505(b) of the HSCA, 35 P.S. § 6020.505(b).  (ECF No. 54 at ¶ 16.)  Instead, the DEP alleges that it elected to undertake a "limited interim response" pursuant to HSCA §§ 103, 501 and 505(c), 35 P.S. §§ 6020.103, 6020.501 and 6020.505(c) that would result in a "long-term, permanent remedy at the Site." (ECF No. 54 at ¶ 17.)  The DEP then avers that "[n]otwithstanding its being labeled an 'interim response' under HSCA, the [DEP's] HSCA limited interim response was not an interim or temporary measure and was not intended to be supplemented with any kind of additional response action."  (ECF No. 54 at ¶ 18.)  DEP alleges that it fulfilled certain statutory prerequisites prior to implementing this HSCA limited interim response, including the publication of an administrative record for a ninety-day public review and comment period and the holding of a public hearing, just as it had done prior to implementing its 2001-2002 comprehensive investigation of the Site.  (ECF No. 54 at ¶ 19.)

DEP further avers that in June 2003 through January 2004, it conducted a "limited interim response" pursuant to the HSCA at the Site.  This "limited interim response" included excavation and off-site disposal, followed by restoration of the Site.  (ECF No. 54 at ¶ 20.) During the "limited interim response" the DEP avers that it "justifiably exceeded the limited

interim response limitation of $2,000,000 pursuant to Section 103 of HSCA, 35 P.S. § 6020.103." (ECF No. 54 at ¶ 21.)

In the next six paragraphs of the Amended Complaint, DEP states that because its "HSCA interim response was oriented to" or "resulted in a final, permanent remedy," "it employed post-removal cleanup standards," it "backfilled and graded the Site," "no additional groundwater monitoring was necessary," and the DEP "dismantled and abandoned all groundwater monitoring wells," it has not taken any additional response action at the Site since January 2004, and does not intend to take any additional action, either investigative or remedial. (ECF No. 54 at ¶¶ 22-26.) DEP concludes that its "HSCA limited interim response at the Site was the equivalent of a CERCLA remedial action." (ECF No. 54 at ¶ 27.) Finally, DEP states that it incorporates an attached affidavit by reference. (ECF No. 54 at ¶ 28.)

DEP avers that it has incurred $3.7 million in response costs and that it complied with the National Contingency Plan, 40 C.F.R. Part 300, *as amended.* (ECF No. 54 at ¶¶ 29-30.) It also states that it "commenced its HSCA limited interim response at the Site in June 2003, within three years of its September 2002 completion of its comprehensive investigation of the Site." (ECF No. 54 at ¶ 31.) DEP further avers that an agreement to toll the statute of limitations as to CERCLA cost recovery claims was executed by the parties effective from February 21, 2009 through August 21, 2009. (ECF No. 54 at ¶ 32.) Having filed its claims for costs of its investigation and its HSCA limited interim response on August 21, 2009, in conjunction with the applicable tolling agreement, DEP avers that it timely filed this action within the applicable CERCLA six-year statute of limitations. (ECF No. 54 at ¶¶ 33-34.)

THE ADMINISTRATIVE RECORD

On May 26, 2001, the DEP published a "Notice of Interim Response" in the Pennsylvania Bulletin indicating that it was "proposing a response action for the Boldan Landfill." (31 Pa. Bull. 2712 (May 26, 2001), ECF No. 67-1 at 2.)

On December 18, 2002, the DEP published an Analysis of Alternatives with "Interim Response" as its heading; the analysis indicated that the DEP was "proposing to conduct an interim response" at the Site which would "consist of removal and disposal of buried drums and contained hazardous substances," and "removal and disposal of any visibly contaminated soil encountered during drum removal." (December 18, 2002, Analysis of Alternatives, ECF No. 67-2 at 2.) The Analysis of Alternatives indicated under "Response Category" that an Interim Response was warranted. (December 18, 2002, Analysis of Alternatives, ECF No. 67-2 at 3.) Under "Cleanup Standards," the DEP indicated that "[t]his proposed response is not a final remedial response pursuant to Section 504 of HSCA and therefore is not required to meet the cleanup standards that apply to final remedial responses." (December 18, 2002, Analysis of Alternatives, ECF No. 67-2 at 3.) The DEP concluded that the selected Alternative would be the removal and disposal of the hazardous waste at the Site, and that the area would be filled and graded after removal. (December 18, 2002, Analysis of Alternatives, ECF No. 67-2 at 5.)

On January 4, 2003, the DEP published in the Pennsylvania Bulletin a "Proposed Interim Response and Public Hearing" pertaining to the Site. (33 Pa. Bull. 77-78 (January 4, 2003), ECF No. 62-6 at 3-4.) Therein, DEP indicated that it determined that it was conducting a further investigation and that "[t]he Department determined that removal and disposal of the hazardous

materials in the industrial waste area of the Site is the appropriate course of action." (33 Pa. Bull. 77-78 (January 4, 2003), ECF No. 62-6 at 3-4.)

On April 4, 2003, DEP published a "Statement of Decision" pursuant to Section 506(e) of HSCA, 35 P.S. § 6020.506(e). (Statement of Decision, ECF No. 67-4.) Therein, DEP indicated that it had decided to conduct an interim response at the Site and that the response would consist of removal and disposal of the hazardous substances. (ECF No. 67-4 at 2.) The Statement of Decision provided in relevant part as follows:

> The Department conducted an investigation of the site from December 2001 to September 2002. A Final Report of the investigation was completed on November 12, 2002. The objectives of the investigation were to characterize the nature and extent of the hazardous substances and contaminants present on the site or that have migrated from the site, assess potential impacts to human health and the environment, and to evaluate potential remedial alternatives appropriate for protecting human health and the environment.
>
> . . .
>
> The industrial waste area is approximately 7.8 acres in size and contains pockets of industrial wastes including numerous 55-gallon drums. During the excavation of test pits within the industrial waste area, 17 drums were uncovered. The drums were in various states of disrepair and several were leaking. The 17 drums were removed, over packed, characterized, and disposed off-site. . . .

(Statement of Decision, ECF No. 67-4 at 3.) Again, under "Response Category," the DEP indicated that "[a]n interim response is warranted under Section 501 of the [HSCA]," and under "Cleanup Standards," the DEP indicated that "[t]he response is not a final remedial response pursuant to Section 504 of HSCA and therefore is not required to meet the cleanup standards that apply to final remedial responses." (Statement of Decision, ECF No. 67-4 at 3.)

On December 20, 2003, DEP published a "Notice of Proposed interim Response" indicating that it "recently completed an investigation of the Site and is currently conducting an

interim response at the [Site] . . . ."  (33 Pa. Bull. 6269 (December 20, 2003), ECF No. 62-7 at 3.)

UNDERLYING STATE COURT ACTION

On June 30, 2008, DEP filed a verified Complaint in Equity in the Court of Common Pleas, Westmoreland County, Pennsylvania against Beazer East, Inc., Boldan, Inc., CMU, Exxon, and Viacom, Inc.  (State Complaint, ECF No. 64-1.)  DEP alleged that the Defendants were liable under the HSCA for cleanup costs allegedly incurred at the Site.  DEP averred that it conducted an investigation at the Site in 2001-2002, and an interim response in 2003-2004. (State Complaint, ECF No. 64-1 at ¶¶ 23, 33.)  In addition, it repeatedly characterized its response at the Site as an interim response.  (State Complaint, ECF No. 64-1 at ¶¶ 30-34.)  In response to the filing of preliminary objections, DEP filed an Amended State Complaint, and again referred to its actions from 2001-2002 as an investigation, and that this investigation confirmed a release and threatened release of hazardous substances at the Site.  (Amended State Complaint, ECF No. 64-2 at ¶ 27.)  The DEP averred that it believed it was necessary to conduct an interim response at the Site and consistently characterized its 2003-2004 actions at the Site as an interim response.  (Amended State Complaint, ECF No. 64-2 at ¶¶ 28, 33, 34, 37-47, 50.) CMU and Exxon filed preliminary objections to the State Amended Complaint arguing that the DEP failed to comply with certain provisions of the HSCA when it failed to institute an administrative or judicial enforcement action under other applicable environmental laws against the owner and operator of the Site, Bolden, Inc.  In response to Defendants' Preliminary Objections to DEP's Amended Complaint, DEP again repeatedly referred to its actions at the Site subsequent to the investigation as an interim response, and at one point, distinguished remedial responses from "an interim response like that at issue here . . . ."  (Plaintiff's Brief in

Opposition to CMU and Exxon's Preliminary Objections to Amended Complaint, ECF No. 67-7 at 13, 24, 25, 26.)  The Court of Common Pleas of Westmoreland County sustained Defendants' preliminary objections and dismissed the Amended Complaint.  (DEP v. Beazer, East, Inc., No. 08-7022 (Westmoreland County, Pa. May 6, 2009) (Opinion and Order sustaining preliminary objections and dismissing amended complaint) (Ackerman, J.), ECF No. 64-3 at 2-7.)

DEP then filed the action presently before the Court on August 21, 2009 pursuant to CERCLA.  (Complaint, ECF No. 1.)

LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993).  A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 129 S. Ct.1937, 1949 (May 18, 2009) (citing *Twombly,* 550 U.S. at 555-57).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949 (citing *Twombly,* 550 U.S. at 556).  The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly*, 550 U.S. at 556-57).

Recently, in *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit discussed its decision in *Phillips v. County of Allegheny,* 515 F.3d 224, 232-33 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of *Twombly* and *Iqbal* as follows:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler*, 578 F.3d at 210.

Thereafter, in light of *Iqbal*, the *Fowler* court set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal,* 129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips,* 515 F.3d at 234-35. *As the Supreme Court instructed in Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" *Iqbal,* 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler,* 578 F.3d at 210-11.

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d,* § 1357; *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3d Cir. 1990)). A court may also consider indisputably authentic documents. *Spruill v. Gillis,* 372 F.3d 218, 223 (3d Cir. 2004); *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993); *Golden v. Cook,* 293 F. Supp.2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of which they may take judicial notice, including records and reports of administrative bodies, and publically available records and transcripts from judicial proceedings 'in related or underlying cases which have a direct relation to the matters at issue.'") (citations omitted). A court may not, however, consider affidavits attached to the complaint as they are not considered written instruments as that term is used in Federal Rule of Civil Procedure 10(c).[2] *Rose v. Bartle,* 871 F.2d 331, 340 n.3 (3d Cir. 1989). *See also* 2 James Wm. Moore et al., Moore's Federal Practice § 10.05[2] (3d ed. Supp. 2008).

In support of their Motions to Dismiss the Amended Complaint, Defendants argue the following: 1) this lawsuit is barred by CERCLA's three-year statute of limitations for recovery of costs from removal actions; 2) the DEP characterized its response action at the Site as an interim response throughout the administrative record and an HSCA interim response is the equivalent of a CERCLA removal action; 3) the DEP characterized its response action at the Site as an interim

---

[2] FED. R. Civ. P. 10(c) provides in relevant part that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

response to the Westmoreland County Court of Common Pleas in its recovery action pursuant to the HSCA; 3) the nature of DEP's actions at the Site demonstrate that it was a removal action under CERCLA; and 4) even if DEP's actions at the Site constitute a remedial action, Plaintiff's claim for recovery of costs is still barred by CERCLA's six-year statute of limitations for remedial actions because the statute of limitations begins to run from the time DEP initiated physical on-site activities, which occurred no later than September 2002, and as early as December 2001.

In Response to Defendants' Motions to Dismiss, DEP argues the following: 1) the factual record must be more fully developed before the court can determine whether the DEP's response at the Site was a CERCLA removal or remedial action; 2) a non-urgent, permanent remedy constitutes a CERCLA remedial action; 3) the DEP conducted the equivalent of a CERCLA remedial action at the Site in the nature of a limited interim response as opposed to a prompt interim response; 4) DEP's HSCA limited interim response was not urgent, and did not address an immediate threat; 5) DEP's HSCA limited interim response effectuated a long-term, permanent remedy; and 6) DEP's claims are not barred by CERCLA's 6-year statute of limitations for remedial actions in light of the following: a) DEP's HSCA limited interim response constitutes a CERCLA remedial action; b) DEP's investigation of the Site constitutes a CERCLA removal; c) the DEP completed its investigation in September 2002; d) DEP commenced its HSCA limited interim response within three years of September 2002, in June 2003 (if remedial action is started within 3 years after completion of removal, removal costs may be recovered in an action for remedial costs); and e) all parties executed an agreement to toll the statute of limitations from February 21, 2009 through August 21, 2009 and DEP's federal complaint was filed on August 21, 2009.

<u>ANALYSIS</u>

Presently before the Court is the issue of whether the response action at the Site was a removal or remedial action under CERCLA for purposes of applying the corresponding statute of limitations. Pursuant to Section 113, the statute of limitations is either three or six years, depending upon whether DEP's response was a removal or remedial action. *See* 42 U.S.C. § 9613. Section 9613 provides in relevant part as follows:

> **(2) Actions for recovery of costs**
> An initial action for recovery of the costs referred to in section 9607 of this title must be commenced –
>> **(A)** for a removal action, within 3 years after completion of the removal action . . . ; and
>> **(B)** for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action, except that, if the remedial action is initiated within 3 years after the completion of the removal action, costs incurred in the removal action may be recovered in the cost recovery action brought under this subparagraph.

42 U.S.C. § 9613(g)(2)(A)&(B).[3]

DEP first argues that under governing case law, a non-urgent, permanent remedy constitutes a CERCLA remedial action. (DEP's Response to Motions to Dismiss, ECF No. 70 at 3-5.) DEP emphasizes that it is the substance of the cleanup action that occurred rather than the action's nomenclature that determines whether it is a CERLCA removal or remedial action. (ECF No. 70 at 3.) DEP continues that there is significant record evidence that DEP's "HSCA interim response at the [S]ite did not address an urgent threat and resulted in a permanent remedy." (ECF No. 70 at 4.)

---

[3] *See generally United States v. Navistar Int'l Transp. Corp.,* 152 F.3d 702, 707-08 (7th Cir. 1998) (discussing Congress' specific purpose in adding the statute of limitations to CERCLA in 1986: its determination "that , in order to achieve timely clean-up of affected sites and to ensure replenishment of the fund, cost recovery actions must commence in a timely fashion.") (footnotes omitted).

CERCLA and HSCA both contain distinct provisions for emergency removals and emergency interim responses. *See* CERCLA, Section 104, 42 U.S.C. § 9604; HSCA, Sections 501(g), 505(b), 35 P.S. §§ 6020.501(g), 6020.505(b). Consequently, a plain reading of CERCLA and HSCA indicates that there can be removals and interim responses that are non-urgent. The Code of Federal Regulations also contemplates that planning periods for removal actions may exceed 6 months and requires that the agency conduct "an analysis of removal alternatives for a site" when, in fact, the planning period does exceed six months. 40 C.F.R. § 300.415(b)(4)(i). Further, simply because a removal action effects a permanent remedy does not automatically convert it into a remedial action. *Reading Co. v. City of Philadephia*, 823 F. Supp. 1218, 1241 (E.D. 1993). In *Reading Co.,* the court noted that although some courts have focused on the immediacy of response, it found "that the better approach is to consider the totality of the circumstances." *Id.* The *Reading* court then quoted *BCW Associates, Ltd. v. Occidental Chem. Corp.,* Civ. A. No. 86-5947, 1988 WL 102641 *18-19 (E.D. Pa. September 29., 1988), as follows:

> The general teaching is that removal actions are primarily those intended for short-term clean-up arrangements and interim responses while remedial actions effect long-term or permanent remedies. (citations omitted)[.] The mere fact, however, that what would otherwise be a removal action effects a permanent remedy does not convert that action into a remedial action. The EPA has clearly contemplated that a removal action might effect a permanent remedy. (citations omitted). . . .
>
> Cost and duration of a response action is relevant to determining whether that action is a removal or a remedial action.
>
> Most importantly, perhaps, is the nature of the action actually taken.
>
> The prototypical remedial action involves the onsite structural confinement of hazardous waste. Although the term "remedial action" may, under certain circumstances, include offsite transport

and storage, off-site actions are more easily characterized as removal actions. In addition, it cannot be ignored that the word "removal" is descriptive as well as denotative.

None of these tests taken alone, adequately characterize a response action a removal or remedial action. The better approach is to view the action taken by the plaintiffs in light of several factors: the cost, complexity, and duration of the clean-up; the immediacy of the release or threatened release and the nature of the action taken.

*Reading Co.,* 823 F. Supp. at 1241-42 (quoting *BCW Associates, Ltd.*, Civ. A. No. 86-5947, 1988 WL 102641 *18-19 (omitting citations) and *quoted in, Tri-County Business Campus Joint Venture v. Clow Corp.,*792 F. Supp. 984, 993 (E.D. Pa. 1992)). *See also Alcan Aluminum Corp. v. United States,* 964 F.2d 252, 259 n.10 (3d Cir. 1992) ("Typically, a 'removal' action is an action intended to remove the hazardous waste from the area, whereas a 'remedial' action involves a long-term effort to remedy the damaged environment.") Here, the administrative record reflects that the response action was approximately 8 months in duration, and involved "removal and disposal of buried drums and contained hazardous substances," and "removal and disposal of any visibly contaminated soil encountered during drum removal." (Analysis of Alternatives, ECF No. 67-2 at 2.)

Further, DEP must be held to its characterizations of the response action in the administrative record;[4] these characterizations were reiterated in its verified Complaint and verified Amended Complaint in the underlying state court action in the Court of Common Pleas of Westmoreland County, and relied upon in its arguments to the state court on preliminary objections.

---

[4] The United States District Court for the Eastern District of Pennsylvania has indicated that a party's "own description of its clean-up efforts is a prime starting point for determining whether those efforts should be labelled as remedial or removal under the statute." *Tri-County Business Campus Joint Venture v. Clow Corp.,* 792 F. Supp. 984, 992 (E.D. Pa. 1992).

The Court is guided by the statutory provisions concerning judicial review in both

CERCLA, and HSCA.  Section 113(j) of CERCLA provides in pertinent part as follows:

### § 9613.        Civil proceedings

. . .

**(j) Judicial review**

**(1) Limitation**

In any judicial action under this chapter, judicial review of any issues concerning the adequacy of any response action taken or ordered by the President shall be limited to the administrative record. Otherwise applicable principles of administrative law shall govern whether any supplemental materials may be considered by the court.

**(2) Standard**

In considering objections raised in any judicial action under this chapter, the court shall uphold the President's decisions in selecting the response action unless the objecting party can demonstrate, on the administrative record, that the decision was arbitrary and capricious or otherwise not in accordance with law.

42 U.S.C. § 9613(j)(1).  Similarly, section 508(c) of HSCA provides in relevant part as follows:

### § 6020.508.   Administrative and judicial review of response actions

**(a)  General rule.**  Notwithstanding any other provision of law, the provisions of this section shall provide the exclusive method of challenging either the administrative record developed under section 506 or a decision of the department based upon the administrative record.

. . .

**(c) Grounds.** A challenge to the selection and adequacy of a remedial action shall be limited to the administrative record developed under section 506.    In a challenge to liability for natural resource damages, civil penalties or the recovery of response costs, or where the assessment of civil penalties is

> challenged, the record shall be limited to the administrative record
> developed under section 506 . . . .

35 P.S. § 6020.508(c).  These statutory provisions underscore the general rule of administrative law that when a court conducts judicial review of a decision issued by an administrative agency, the material to be reviewed is limited to the administrative record.  *See Camp v. Pitts,* 411 U.S. 138, 143 (1973) (administrative finding should be reviewed on the administrative record), *quoted in, Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 549 (1978) ("We have made it abundantly clear before that when there is a contemporaneous explanation of the agency decision, the validity of that action must 'stand or fall on the propriety of that finding . . . .'").  *See also Federal Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397 (1974) (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168-1690 (1962)) ("[W]e cannot 'accept [] counsel's post hoc rationalizations for agency action'; for an agency's order must be upheld, if at all, 'on the same basis articulated in the order by the agency itself.'"); *SEC v. Chenery Corp.,* 318 U.S. 80, 87 (1943) (courts may not affirm an agency action on grounds other than those adopted by the agency in administrative proceedings).

The administrative record here repeatedly and consistently characterizes DEP's response action at the Site as an interim response.  The notice published by the DEP in the Pennsylvania Bulletin on May 26, 2001, contains the unambiguous heading of "Notice of Interim Response." (ECF No. 67-1 at 2.)  Likewise, DEP's December 18, 2002 "Analysis of Alternatives" was also entitled "Interim Response," and indicates DEP's future plans to conduct an interim response at the Site, and describes what the response will consist of: "removal and disposal of buried drums and contained hazardous substances," and "removal and disposal of any visibly contaminated soil encountered during drum removal."  (ECF No. 67-2 at 2.)  The Analysis of Alternatives

specifically states that "[a]n Interim Response is warranted," and that the "proposed response is *not a final remedial response* pursuant to Section 504 of HSCA[5] and therefore is *not required to meet the cleanup standards that apply to final remedial responses*." (ECF No. 67-2 at 3.) (emphasis added). DEP concludes that Alternative 3, removal and disposal off-site, is the selected alternative. (ECF No. 67-2 at 5.) DEP's characterization of the response action as an interim response was repeated in its January 4, 2003 publication in the Pennsylvania Bulletin of "Proposed Interim Response and Public Hearing." (ECF No. 62-6 at 3.) Again, in its "Statement of Decision" DEP indicated that it had decided to conduct an interim response at the Site, described its plan to remove and dispose of the hazardous substances, and specifically noted that its planned response "is not a final remedial response," and "is not required to meet the cleanup standards that apply to final remedial responses." (ECF No. 67-4 at 2-3.) Finally, on December 2003, DEP's publication in the Pennsylvania Bulletin stated that it "recently completed an investigation of the Site and is currently conducting an interim response at the [Site] . . . ." (ECF No. 62-7 at 3.)

DEP attempts to side step its characterization of the response action in the administrative record as an interim response by differentiating between a prompt interim response (which it argues is the equivalent of a CERCLA removal action) and a limited interim response (which it argues is the equivalent of a CERCLA remedial response). (DEP's Response to Motions to Dismiss, ECF No. 70 at 5-7 [hereinafter "ECF No. 70 at __"].) DEP contends that the HSCA authorizes these two kinds of interim responses. Although section 505(b) pertains to interim responses that may be taken before the development of an administrative record where prompt action is required to protect public health or safety or the environment, there is absolutely no support in the statute or applicable case law to suggest that interim responses not taken on an

_____

[5] Section 504 concerns the cleanup standards for final remedial responses. *See* 35 P.S. § 6020.504.

emergency basis are responses to effect a permanent remedy. In fact, section 505(b) is concerned with DEP's compliance with the notice requirements of section 506(b) within a certain period of time after the initiation of the response action.[6] DEP's only citations to support this distinction are to general provisions of HSCA[7]; DEP fails to cite any specific support for this distinction. After an exhaustive search, the Court could uncover no discussion or mention of the phrase "limited interim response" in the relevant statutes, case law, or relevant secondary sources. Although the Court notes that the HSCA is not well drafted[8], it simply cannot find any support for DEP's interpretation of sections 103, 501 and 505(c), and corresponding regulations at 25 Pa. Code §§ 3.1 and 3.21 cited in its responsive brief. (ECF No. 70 at 5.) Consequently, the Court finds this argument unpersuasive.

The Court also finds that DEP's own statements in the administrative record belie its argument that the December 2001 to September 2002 investigation was in fact a removal action, and its June 2003 to January 2004 actions at the Site were a remedial action, thereby resulting in the timely filing of its federal complaint in August 2009 in light of the tolling agreement executed by the parties. For instance, in the Analysis of Alternatives and Proposed Response dated December 18, 2002, DEP indicates, in the future tense, that "[t]he Department is proposing to conduct an interim response at the Boldan Landfill Site." (ECF No. 67-2 at 2.) This same

---

[6] Section 505(b) provides in relevant part as follows:

> **(b) Interim response.**—An interim response may be taken before the development of an administrative record when, upon the basis of the information available to the department at the time of the interim response, there is a reasonable basis to believe that prompt action is required to protect the public health or safety or the environment. When the department takes an interim response before the development of an administrative record, it shall provide the notice required by section 506(b) within 30 days of initiating the response action. In addition to the information required by section 506(b), the notice shall describe the actions which have already been taken and any additional actions to be taken prior to the close of the public comment period under section 506(c).

35 P.S. § 6020.505(b).

[7] DEP relies heavily on 35 P.S. § 6020.505(c) which concerns the implementation of the response action after the selection of an interim response or remedial response.

[8] *See* John M. Hyson & John P. Judge, A Comparative Analysis of the Federal and Pennsylvania Superfund Acts, 1 Vill. Envt'l L.J. 1, n.6 (1990).

document also indicates that the "proposed response is *not a final remedial response*," and that "[a]dditional response action may be needed to achieve a complete and final cleanup for the site." (ECF No. 67-2 at 3) (emphasis added). At no point in its discussion in the administrative record of the 2001-2002 investigation does DEP indicate that the 2001-2002 investigation constitutes an interim response. Instead, the Analysis of Alternatives and Proposed Response specifically provides the following with regard to the objective of the December 2001 to September 2002 investigation:

> The objectives of the investigation were to characterize the nature and extent of the hazardous substances and contaminants present on the Site or that have migrated from the Site, assess potential impacts to human health and the environment, and to evaluate potential remedial alternatives appropriate for protecting human health and the environment.

(ECF No. 67-2 at 3.) Similarly, in the Pennsylvania Bulletin dated December 20, 2003, DEP indicated that it "*recently completed* an investigation of the Site, and *is currently conducting* an interim response at the [Site] . . . ." (ECF No. 62-7 at 3) (emphasis added). Hence, DEP's present attempt to re-characterize its response actions otherwise described in the administrative record must fail.

Turning now to DEP's verified Complaint and verified Amended Complaint[9] filed in the Court of Common Pleas of Westmoreland County, DEP again refers to its action at the Site in 2001-2002 as an investigation, and its response action in 2003-2004 as an interim response, not a limited interim response. (ECF No. 64-1 at ¶¶ 23, 30-34.) These characterizations were repeated in the state Amended Complaint. (ECF No. 64-2 at ¶¶ 27, 28, 33, 34, 37-47, 50.) Moreover, in its response to Defendants' preliminary objections, DEP again repeatedly refers to its actions at the Site subsequent to the investigation as an interim response, and at one point, distinguishes

---

[9] In verifying the state complaint and state amended complaint, representatives of the DEP certified that the statements of fact contained therein were true. *See* Pa. R. Civ. P. 102

remedial responses from "an interim response like that at issue here . . . ." (Plaintiff's Brief in Opposition to CMU and Exxon's Preliminary Objections to Amended Complaint, ECF No. 67-7 at 13, 24, 25, 26.)

Finally, the Court turns to the federal Amended Complaint[10] filed by DEP pursuant to CERCLA. In applying *Twombly* and its progeny, the Court separates the factual and legal elements of DEP's claim *See Fowler,* 578 F.3d at 210-11. The Court must take all of DEP's factual averments as true and all favorable inferences that can be drawn from those facts. *Id.* The Court then disregards all legal conclusions set forth by DEP in the Amended Complaint. *Id.*

The Amended Complaint sets forth facts concerning the clean-up actions that occurred at the Site, and when those actions occurred.[11] DEP's characterization of its response actions at the Site pursuant to HSCA and CERCLA, are legal conclusions that this Court may disregard. *See Fowler,* 578 F.3d at 210-11. Against this backdrop, the Court finds that DEP has failed to set forth sufficient factual matter to show a plausible claim for relief. The actions taken by DEP at the Site, as a matter of law, were the equivalent of a CERCLA removal action. Consequently, its cost recovery action is barred by the three-year statute of limitations applicable to CERCLA removal actions. *See* 42 U.S.C. § 9613(g)(2)(A). The removal was completed in 2004, and Plaintiff filed its federal complaint in August 2009.

For the foregoing reasons, Defendants' Motions to Dismiss at ECF Nos. 62, 65 and 67 will be granted, and Plaintiff's Amended Complaint at ECF No. 54 will be dismissed with prejudice as to Defendants Carnegie Mellon University, CBS Corporation, and Exxon Mobil Corporation. An appropriate order will follow.

---

[10] In its original federal Complaint, DEP did not characterize its 2001-2002 investigation at the Site as a CERCLA removal, nor did it characterize its 2003-2004 activities at the Site as an HSCA "limited interim response." In fact, the phrase "limited interim response" first appears in the record with DEP's filing of the federal Amended Complaint.

[11] These facts are not contradicted by the facts revealed in the administrative record and the underlying state court complaint.

By the Court:

Lisa Pupo Lenihan
United States Magistrate Judge

Dated: November 3, 2010

cc: All counsel of record
    via electronic filing